UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL WASHINGTON,

              Petitioner,

-vs-

DAVID F. NAPOLI,

              Respondent.

_____

**DECISION AND ORDER**
**No. 08-CV-6453T**

## I. Introduction

*Pro se* petitioner Daniel Washington ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 30, 2003, in New York State, Supreme Court, Monroe County, convicting him, after a jury trial, of Attempted Robbery in the First Degree (N.Y. Penal Law ("Penal Law") §§ 110.00, 160.15 [4]), and two counts of Assault in the First Degree (Penal Law §§ 120.10 [1], [4]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

The charges against Petitioner arose from a shooting that occurred September 27, 2003 at or near 24 Harris Street in the City of Rochester.

Petitioner was indicted by a Monroe County Grand Jury and charged with robbery in the first degree and two counts of assault in the first degree. See Resp't Ex. B at 5-6. Petitioner pleaded not guilty and proceeded to trial.

Prior to trial, Petitioner moved to suppress physical evidence on the grounds that such evidence was the product of an illegal search and seizure. See Resp't Ex. B at 11-36.

A suppression hearing was held on August 25, 2003 before the Honorable David D. Egan. See Hr'g Mins. [H.M.] of 08/25/03 2-107. The testimony at the suppression hearing established that on September 27, 2003, at about 8:55 p.m., officers of the Rochester Police Department responded to 24 Harris Street after receiving a radio dispatch advising that a man had been shot there. Upon their arrival at the scene, they discovered pizza deliveryman Bulent Eroglu ("Eroglu" or "the victim") lying on the sidewalk, bleeding from what appeared to be a gunshot wound to his abdomen. Eroglu told police he had been shot, but could not identify the shooter. Police also recovered a spent shell casing from a rifle from the area where Eroglu was lying. Medical personnel arrived shortly thereafter, and the victim was removed from the scene. H.M. 4-8.

Jarvis Williams ("Williams"), a resident of the apartment building at 24 Harris Street who was returning home just prior to the shooting, told police that he had seen three men on the porch of a nearby vacant house. Before Williams entered his apartment

building, he saw one of the men walk away from the porch of the vacant house. He also saw Eroglu arrive at 24 Harris Street to deliver a pizza. Shortly after Williams entered his apartment, he heard what sounded like a gunshot and looked out his window to see two men running from the scene towards Huntington Park (a street that intersects with Harris Street), and Eroglu lying on the ground. H.M. 8-10.

While police were canvassing the area, one of the local residents approached Officer Pearce and indicated to him that three days earlier he had seen three "younger" Hispanic males playing with a rifle in a garage on Huntington Park across the street from 24 Harris Street. The police then crossed the street and entered the garage on Huntington Park, which had no door and was otherwise open except for a tarp that covered about half of the opening. A car was parked in the garage, and inside the car police discovered Christopher Schuknecht ("Schuknecht") crouched down in the backseat. Police also observed a rifle on the floor in the front of the car and a rifle bullet in the backseat. Police then obtained a search warrant to seize the rifle and the bullet. H.M. 27-57.

Following the suppression hearing, the hearing court denied Petitioner's motion to suppress the physical evidence, ruling that Petitioner failed to establish standing to contest the search of the garage and the seizure of the rifle and bullet, and, in any

event, the search and seizure were warranted by exigent circumstances. H.M. 104-107.

At trial, Schuknecht testified against Petitioner and the rifle and bullet were linked to Petitioner and the shooting. Petitioner was found guilty and sentenced to concurrent determinate terms of imprisonment of fifteen years for the attempted robbery conviction and twenty-five years for each of the assault convictions. Sentencing Mins. 18-19.

The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on April 20, 2007. People v. Washington, 39 A.D.3d 1228 (4th Dep't. 2007); lv. denied, 9 N.Y.3d 870 (2007).

This habeas corpus petition followed, wherein Petitioner seeks relief on the ground that his conviction was obtained by use of evidence obtained from an unconstitutional search and seizure. See Pet. ¶ 22A-D.

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of

-5-

incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828

(2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, © assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation. Id. at 194.

## IV. Petitioner's Claims

In grounds one-four of the petition, Petitioner contends that his conviction was obtained by use of evidence obtained from an unconstitutional search and seizure. See Pet. ¶ 22A-D. Petitioner raised these claims on direct appeal, and they were rejected on the merits. See Washington, 39 A.D.3d at 1229.[1] As discussed below,

---

[1] The Appellate Division, Fourth Department held as follows: "Contrary to defendant's contention, Supreme Court properly refused to suppress physical evidence seized following a warrantless search based on defendant's lack of standing to contest the search. At a suppression hearing, a defendant has the burden of establishing standing by demonstrating a personal legitimate expectation of privacy in the searched premises. To sustain that burden, defendant was not required either to testify or to present evidence on the issue of standing; he was entitled to rely on evidence elicited during the People's direct case and during cross-examination by defense counsel of the People's witnesses. Here, defendant offered no evidence at the suppression hearing, and there was nothing in the People's

Petitioner's Fourth Amendment claims are barred from habeas review by Stone v. Powell, 428 U.S. 465 (1976).

"Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494 (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978). A Federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a

---

evidence to support defendant's alleged expectation of privacy in the garage that was searched. The allegations in defense counsel's supporting affirmation concerning defendant's expectation of privacy in the garage served only to raise standing as an issue of fact and avoid summary judgment under CPL 710.60 (3). In any event, we further conclude that the court also properly determined that exigent circumstances justified the warrantless search." Washington, 39 A.D.3d at 1229 (internal citations and quotations omitted).

"'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See Crim. Proc. Law ("C.P.L.") § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in C.P.L. § 710.10 et seq. as being facially adequate).

Petitioner may not raise his Fourth Amendment claims on habeas review because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate the issue in state court at a pre-trial suppression hearing. The record reflects that the trial court conducted a pre-trial hearing where evidence concerning the circumstances of the search of the garage and the seizure of the rifle and bullet were introduced and witnesses were cross-examined. After hearing all of the evidence presented on the issue, the trial court issued a decision denying Petitioner's motion to suppress. The Appellate Division subsequently affirmed the hearing court's ruling on the merits, and leave to appeal from the decision of the Appellate Division was denied by the Court of Appeals.

Moreover, Petitioner has not demonstrated that an "unconscionable breakdown" occurred in the courts below. His dissatisfaction with the determination arrived at by the trial

court, which was subsequently affirmed by the Appellate Division, does not constitute the sort of "breakdown" referred to in Gates. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988) (per curiam); accord, Capellan, 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, e.g., the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. And, even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. See Capellan, 975 F.2d at 71.

Thus, the Court is precluded from considering Petitioner's fully litigated Fourth Amendment claims on habeas review. The claims are dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of

appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

───────────────────────────
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    November 10, 2010
          Rochester, New York